**JOSEPH A. SCALIA, II**
Nevada Bar No. 5123
415 South Sixth Street, Suite 300
Las Vegas, Nevada 89101
Phone: (702) 678-6000
Fax :   (702) 471-7087
Email: bankruptcy@josephscalia.com
Attorney for Debtor

*Attorney for Petitioner*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SEMION KRONENFELD<br>(Canadian Case No. 31-1297500)<br><br>Debtor in a foreign proceeding. | Case No.: 14-10736 ABL<br><br>Chapter 15<br><br>MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING |

SEMION KRONENFELD (the "Petitioner" or "Debtor"), duly authorized foreign representative, by and through its United States counsel, THE SCALIA LAW FIRM, respectfully submits this Memorandum Of Law In Support Of Verified Petition Under Chapter 15 Of The Bankruptcy Code For Recognition Of A Foreign Main Proceeding, dated January 26,2012 (the "Verified Petition,,).l

**PRELIMINARY STATEMENT**

Chapter 15 of the U.S.C. §§ 101-1532 (the "Bankruptcy Code") authorizes this Court to recognize a foreign main proceeding (as that term is defined in sections 101(23) and 1502(4)) upon the proper commencement of a chapter 15 case under sections 1504, 1515, and 1517 by a foreign representative (as that term is defined in section 101(24)). As described herein, the Verified Petition has satisfied all of the statutory requirements under the Bankruptcy Code

1

necessary for an order recognizing the Company's voluntary proceeding under the Bankruptcy and Insolvency Act in Canada as a foreign main proceeding under chapter 15, and Petitioner's request is consistent with the goals of chapter 15 to foster international cooperation and assistance to foreign courts in ensuring fair treatment of all parties including debtor's right to a fresh start. Accordingly, pursuant to section 1517(a) of the Bankruptcy Code, this Court should enter the proposed order recognizing the Debtor's bankruptcy proceeding in Canada as a foreign proceeding under chapter 15.

## POINTS AND AUTHORITIES

### Facts

The pertinent facts, including, without limitation, the facts recited below, as set forth in the Verified Petition certified by the Petitioner, and supported by the Declaration of SEMION KRONENFELD as further supported by the exhibits to the Verified Petition, all of which were filed contemporaneously on February 4 -6 with the Official Form Voluntary Petition and are fully incorporated herein.

### MEMORANDUM OF LAW

Chapter 15 of the Bankruptcy Code applies when a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l). The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under section 1517 of the Bankruptcy Code because: (A) the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code (B) the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in the location of the center of main interests for SFC; (C) the Monitor is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code; (D) the Chapter 15 Petition meets the requirements of sections

1504, 1509, and 1515 of the Bankruptcy Code; and (E) granting recognition of the Canadian Proceeding as a foreign main proceeding would not be manifestly contrary to a public policy of the United States, and is therefore required pursuant to section 1517 of the Bankruptcy Code.

A.   *PETITIONER'S REQUEST FOR RECOGNITION OF THE FOREIGN PROCEEDING MUST BE ENTERED*

Under § 1517(a) of the Bankruptcy Code, an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met.  As the legislative history to Chapter 15 indicates, "[t]he requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition." H.R. REP. 109-31, pt 1(2005).  Thus recognition under section 1517(a) of the Bankruptcy Code is mandatory where, as here, the chapter 15 petition and supporting documents meet the statutory requirements.

The Petitioner has filed a valid Verified Petition along with each of the other documents required by Section 1515 of the Bankruptcy Code.   In addition, as demonstrated in the Verified Petition and the supporting documents filed in connection therewith, a voluntary bankruptcy in Canada was commenced by the Debtor.  Accordingly, the Petitioner has satisfied the requirements of section 1517(a) and is entitled to entry of any order recognizing the Canadian Proceeding as a foreign main proceeding under section 1517(b)(1).

B.   **THE CASE IS PROPERLY A CASE UNDER CHAPTER 15**

1)   The Case Concerns a Foreign Proceeding

Section 101(23) of the Bankruptcy Code defines a "foreign proceeding, " in pertinent part, as follows:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of reorganization or liquidation.

11 U.S.C. § 101(3).

Courts have routinely recognized Canadian proceedings as foreign proceedings under chapter 15 of the Bankruptcy Code. See, e.g., In re Nortel Networks Corp., No. 09-10164 (Bankr. D. Del. Feb. 27, 2009); In re Pope & Talbot, Inc., No. 08-11933 (Bankr. D. Del. Sept. 8, 2008); In re Destinator Techs. Inc., No. 08-11003 (Bankr. D. Del. June 6, 2008); In re Mount Real Corp., No. 0641636 (Bankr. D. Minn. Sept. 6, 2006); In re Quebec, Inc., No. 06-07875 (Bankr. N.D. Ill. Aug. 8, 2006); In re Norshield Asset Mgmt., No. 06-40997 (Bankr. D. Minn. June 28, 2006); In re MuscleTech Research & Dev., No. 06-10992 (Bankr. S.D.N.Y. Mar. 3, 2006)[4]. Similarly, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15 of the Bankruptcy Code, courts regularly granted Canadian proceedings, including insolvency proceedings, comity. See Smith v. Dominion Bridge Corp., 1999 WL 111465, at *3 (E.D. Pa. Mar. 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian Bankruptcy proceedings."); In re Davis, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings.").

Here, the Debtor's Canadian bankruptcy proceeding qualifies as a foreign proceeding under section 101(23). First, the Debtor's bankruptcy proceeding is a collective proceeding for the benefit of all of Debtor's creditors as a whole, not just for a single creditor. Second, the Canadian proceeding is pending in a foreign country, Canada. Third, as stated in more detail in the declaration of Semion Kronenfeld, the Debtor's residence is in Canada and subject to the jurisdiction of the Superior Court of Justice in Bankruptcy and Insolvency in Ontario Canada. Accordingly the Canadian proceeding satisfies all of the requirements of section 101(23) of the Bankruptcy Code.

**2)** *The Case was commenced by a Foreign Representative pursuant to Section 101(24).*

The Monitor duly and properly commenced the chapter 15 case, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Chapter 15 Petition for recognition of a foreign proceeding under section 1515(a), accompanied by all documents and information required by section 1515(b) and (c). *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."). The chapter 15 case was commenced by the duly court-appointed and authorized "foreign representative" within the meaning of the section 101(24) of the Bankruptcy Code, which provides in pertinent part, as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.
> 11 U.S.C. §101(24).

The Petitioner is responsible for, among other things, locating, protecting and preserving the Company's property, administering the Debtor's assets, carrying out investigations respecting the affairs or property of the Debtor and exercising an extensive array of powers including enforcing the discharge of the Debtor.

Accordingly, the Petitioner is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and is therefore entitled to commence this case under chapter 15 of the Bankruptcy Code.

C)  THE FOREIGN PROCEEDING SHOULD BE RECOGNIZED AS A FOREIGN MAIN PROCEEDING

This Court must recognize the Canadian proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code which provides a foreign proceeding is one which is pending in the country where the debtor has its center

of main interests. 11 U.S.C. §1517(b)(1). In the case of an individual the center of main interests is presumed to be the debtor's place of habitual residence. 11 U.S.C. §1516(c). See In re Betcorp Ltd., 400 B.R. 266 (Bankr. D.Nev. 2009).

Here, Debtor's place of habitual residence is located in Canada. Accordingly, given the Canadian proceeding pending in Canada where Debtor resides and such proceeding must be recognized as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code. Finally, in compliance with the introductory language of section 1517, granting recognition of the Canadian Proceeding would not be an action "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. As noted above, since the passage of chapter 15, Canadian proceedings under the CCAA have routinely been granted recognition by courts in the United States and, in particular, this District. *See infra* (citing cases). Therefore, there is no basis for the Court to refuse recognition pursuant to section 1506 of the Bankruptcy Code.

**D)    *Principles of Comity Embodied In Chapter 15 Strongly Favor Enforcement of The Canadian Discharge Orders.***

Upon recognition of the Canadian Proceeding as a "foreign main proceeding," longstanding principles of international comity embodied in chapter 15 heavily weigh in favor of enforcing the Canadian Orders in the United States. "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings." *Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987). The classic definition of comity comes from a Supreme Court case granting enforcement to a judgment obtained by a foreign bankruptcy trustee:

> "Comity" . . . is recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

6

*Hilton v. Guyot*, 159 U.S. 113, 163-164, 16 S. Ct. 139 (1895). Accordingly, granting comity to judgments in foreign proceedings is appropriate as long as parties are provided the fundamental protections assured to litigants in the United States. *See id.* at 202-03 (applying comity analysis to French judgment obtained by foreign liquidator against U.S. citizens, and finding it was "satisfied that [] there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries . . . .").

Furthermore, the importance of granting comity is heightened in the insolvency context because the collective nature of insolvency proceedings requires that "the assets of a debtor are dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic,or piecemeal fashion. Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard S.S. Co., Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 456-58 (2d Cir. 1985) (citing *Hilton*). Accordingly, in considering judgments rendered by foreign courts in insolvency matters, comity may be withheld only if its extension would cause American creditors to be "treated in some manner inimical to this country's policy of equality." *Id.* at 459 (citation omitted).

For more than 100 years prior to the enactment of the Bankruptcy Code, courts respected principles of comity as a matter of common law, enforcing foreign insolvency decisions in the United States if the foreign proceeding afforded due process and our most fundamental public policies were not undermined. *See, e.g., Canada S. Ry. Co. v. Gebhard*, 109 U.S. at 537 (enforcing Canadian restructuring of bonds over

objection of United States bondholders, explaining that "every person who deals with a foreign corporation impliedly subjects himself to [the] laws of the foreign government[, and] anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere.").7 With the enactment of the Bankruptcy Code in 1978, Congress provided bankruptcy courts with statutory authority to extend comity to foreign decisions in cross-border insolvency cases under former section 304 of the Bankruptcy Code, which Congress then repealed and replaced with chapter 15 in 2005.

    The purpose of chapter 15 is to continue and enhance the United States' long history of granting comity in cross-border insolvency proceedings. *See* 11 U.S.C. §1501; *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with 7 *Gebhard* has been described as the "most important of the American cases" ever to address the issue of respecting discharges in foreign reorganization cases. J.L. Westbrook*, Chapter 15 and Discharge*, 13 Am. Bankr. Inst. L. Rev. 503, 507 (2005)  foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."). As this Court recently explained, "Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation." *In re Fairfield Sentry Ltd.*, No. 10-13164, 2013 Bankr. LEXIS 136 at *31 (Bankr. S.D.N.Y. Jan. 10, 2013) (citing 11 U.S.C. § 1501(a) (specifying Chapter 15's "most basic objective is to foster the orderly administration of cross-border restructurings"); 11 U.S.C. § 1504 (indicating that "any case commenced under Chapter 15 is 'ancillary' to a foreign proceeding pending elsewhere"); 11 U.S.C. § 1525 ("[T]he [ancillary]

8

court shall cooperate to the *maximum extent possible* with a foreign court") (emphasis added); 11 U.S.C. § 1527 (stating cooperation "may be implemented *by any appropriate means*") (emphasis added)); see also 11 U.S.C. § 1509(b) ("If the court grants recognition under section 1517, and subject to limitations that the court may impose consistent with the policy of this chapter … (3) a court in the United States **shall** grant comity or cooperation to the foreign representative.") (emphasis added). "All in all, 'Chapter 15 provides courts with broad, flexible rules to fashion relief appropriate for effectuating its objectives in accordance with comity.' In fashioning such relief, courts must 'take into account the interests of the United States, the interests of the foreign state or states involved, and the mutual interests of the family of nations in just and efficiently functioning rules of international law.'" *Id.* (quoting *In re Vitro S.A.B. de CV*, No. 12-10542, 2012 WL 5935630, at *16 (5th Cir. Nov. 28, 2012)).

Moreover, comity is all the more appropriate here because the orders sought to be enforced were issued by a court of competent jurisdiction in Canada. United States courts consistently noted that orders emanating from a common law jurisdiction akin to that of the United States are particularly deserving of comity. *See, e.g., In re Bd. of Dirs. of Hopewell Int'l Ins Ltd., Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002) ("[W]hen the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted)).

Furthermore, the close relationship between the United States and Canada, our immediate neighbor to the North and fellow member of NAFTA, warrants even greater respect for the Canadian Orders. This concept was embodied in the

9

American Law Institute's *Principles of Cooperation Among the NAFTA Countries* (2003) (hereinafter, "**ALI Principles**"), which were developed by experts in insolvency law from all three NAFTA countries — Canada, Mexico, and the United States — as "principles and methods of cooperation that would assist in multinational bankruptcy cases within NAFTA, ***by giving bench and bar a workable baseline of agreed approaches to such cases***." J. L. Westbrook, *Multinational Enterprises in General Default: Chapter 15, the ALI Principles, and the EU Insolvency Regulation*, 76 Am. Bankr. L.J. 1, 4 (2002). "[T]he [ALI] Principles were drafted with Chapter 15 in mind and provide authority for resolution of a number of issues not fully addressed by Chapter 15 or addressed only in part." *See* J. L. Westbrook, *Chapter 15 At Last*, 79 Am. Bankr. L.J. 713, 714 (2005). Two of the ALI Principles directly address the enforcement in one NAFTA country of a reorganization plan approved in another. First, Procedural Principle 26 "would make a reorganization plan binding on any party that participates in the proceeding or accepts its fruits." J. L. Westbrook, *Chapter 15 and Discharge*, 13 Am. Bankr. Inst. L. Rev. 503, 515 (2005). Second, Procedural Principle 27 "would bind to a reorganization plan unsecured creditors who did not participate in the bankruptcy proceeding in the foreign jurisdiction." *Id.* Thus, ALI Procedural Principles 26 and 27, which were drafted for the specific purpose of guiding courts in a NAFTA country asked by a foreign representative to enforce a reorganization plan approved in another NAFTA country, clearly suggest that the Plan should be fully enforced in the United States in this case.

Accordingly, the principles of international comity embodied in Chapter 15 weigh strongly in favor of enforcement of the Canadian Orders.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests this Court i) enter an order recognizing the Debtor's Canadian proceeding as a foreign main proceeding under section 1517 of the Bankruptcy Code, ii) granting the relief requested in the Petition, and iii) granting such other and further relief as may be just and proper.

Dated this 6th day of February, 2014

_____
Joseph A. Scalia, Esq.
Nevada Bar No. 5123
415 S. Sixth St. Suite 300
Las Vegas, NV 89101
(702) 678-6000